DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants Garrett Gabel and Bruce Kuhlman ("Gabel/Kuhlman") appeal the decision of the Bowling Green Municipal Court ordering them to vacate unit #39 of an apartment complex owned by appellee Haven House Manor, Ltd. ("Haven House"). Because we conclude that the trial court did not err, we affirm.
 {¶ 2} This case involves the unusual circumstances of the renting of the same apartment to two separate sets of tenants. The first set of renters, Gabel/Kuhlman, initially entered into a lease with Haven House for unit #37 on August 9, 2001 for a lease term of August 20, 2001 to August 12, 2002. On December 7, 2001, Gabel/Kuhlman renewed their lease for unit #37 for another year until August 12, 2003 in order to secure the same rent. In early 2002, Gabel/Kuhlman were notified that Haven House planned to renovate some of its apartments. Given the option of moving into a renovated unit with a higher rent or staying in the same unit for the same rent, they decided to remain in unit #37. Sometime afterwards, Haven House decided to renovate all of its apartments, and Gabel/Kuhlman were asked to move into unit #39 so that unit #37 could be renovated. Gabel/Kuhlman entered into a lease addendum on June 3, 2002, that transferred them to unit #39 for the rest of their lease term, until August 12, 2003. They moved into unit #39 early the next month. Within two weeks, it was discovered that Haven House had already signed a lease dated March 6, 2002 for unit #39 with another set of tenants, appellees Jama Jobe, John Hammond, and Steve Frase ("Jobe/Hammond/Frase"). With both sets of tenants wanting possession of unit #39, Haven House tried to have either Gabel/Kuhlman or Jobe/Hammond/Frase accept remodeled unit #37, but neither group would agree.
 {¶ 3} On August 13, 2002, Haven House filed a complaint for forcible entry and detainer against Gabel/Kuhlman, the tenants in possession of unit #39, also rented to Jobe/Hammon/Frase. In the meantime, Jobe/Hammond/Frase agreed to temporarily move into unit #37. In September 2002, Haven House amended its complaint to add Jobe/Hammond/Frase as defendants and asked that the trial court declare and construct the rights and responsibilities of each party with regard to the two leases. Haven House requested possession of the premises and restitution from Gabel/Kuhlman, if the trial court were to find in favor of Jobe/Hammond/Frase.
 {¶ 4} A bench trial was held November 21, 2002. In its judgment entry filed November 27, 2002, the trial court found that a mutual mistake had been made about the availability of unit #39 when Gabel/Kuhlman and Haven House signed their lease addendum. The trial court ordered Gabel/Kuhlman to vacate unit #39 within 14 days.
 {¶ 5} Gabel/Kuhlman appeal from the decision of the trial court and set forth the following two assignments of error:
 {¶ 6} "I. The trial court erred as a matter of law by granting declaratory judgment in favor of plaintiff/appellee."
 {¶ 7} "II. The trial court erred as a matter of law by ordering the eviction of defendants/appellants, as the court did so in contravention of Ohio's landlord-tenant law."
 {¶ 8} In the first assignment of error, Gabel/Kuhlman contend that the trial court misapplied the law on mistake. Both Gabel/Kuhlman and Haven House agree that the doctrine of mutual mistake of fact applies in this case. In Reilley v. Richards (1994), 69 Ohio St.3d 352, the Ohio Supreme Court reaffirmed its adherence to the doctrine of mutual mistake as a ground for rescission of a contract under certain circumstances. "Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake * * *." 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake Section 152(1). A party bears the risk of a mistake when "(a) it is allocated to him by agreement of the parties; or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient; or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." Id. at 402-403, Mistake Section 154.
 {¶ 9} In this case, the parties agree that there was a mistake as to a basic assumption on which the contract was made — i.e., the availability of unit #39. They also agree that Haven House is the adversely affected party because it is potentially liable for damages on a breach of contract claim by Jobe/Hammond/Frase, the earlier lessees of unit #39. Gabel/Kuhlman and Haven House, however, dispute who bears the risk of the mistake. A review of both the lease and the addendum shows that neither document allocated the risk of a mistake. There is also no evidence that either Gabel/Kuhlman or Haven House proceeded with the agreement based upon limited knowledge. Therefore, the risk of the mistake had to be allocated by the trial court.
 {¶ 10} Gabel/Kuhlman maintain that the trial court erroneously allocated the risk of the mistake between them and Jobe/Hammond/Frase when it should have allocated separately the risk between Gabel/Kuhlman and Haven House and between Jobe/Hammond/Frase and Haven House. There appears to be some merit to Gabel/Kuhlman's contention. In its judgment entry, the trial court then stated, "At the time plaintiff entered into the addendum with defendants Gabel and Kuhlman, apartment 39 had already been leased for the 2002-2003 year to the other defendants. * * * Both plaintiff and defendants Gabel and Kuhlman believed that apartment 39 was available for rental. The mistake about the availability of apartment 39 was a material fact as it was a basic assumption on which the contract was made. * * *
 {¶ 11} "* * *
 {¶ 12} "When defendants, Jobe, Hammond and Frase entered into their written lease with plaintiff on March 6, 2002, there was no mistake of fact. Apartment 39 was available for lease to them. As between the defendants, defendants Gabel and Kuhlman should bear the consequences of the mistaken dates on the addendum rental period."
 {¶ 13} While we find that the trial court was correct when it identified the addendum as the only agreement in which there was a mutual mistake of fact, the trial court incorrectly allocated the risk of the mistake by allocating between the two sets of tenants. Jobe/Hammond/Frase were not parties to the addendum; Gabel/Kuhlman and Haven House were. The trial court should have allocated the risk of the mistake in the addendum between Haven House and Gabel/Kuhlman. Therefore, we need to determine who should bear the risk of the mistake as between Haven House and Gabel/Kuhlman.
 {¶ 14} Gabel/Kuhlman argue that Haven House should bear the risk of the mistake because it had sole access to, and control of, the information pertaining to the availability of unit #39. They contend that Haven House forfeited its right to rescind the addendum because it was negligent. In Reilley, the Supreme Court of Ohio stated, "In Irwin v.Wilson (1887), 45 Ohio St. 426, 15 N.E. 209, we held that a buyer is entitled to rescission of a real estate purchase contract where there is a mutual mistake as to a material part of the contract and where the complaining party is not negligent in failing to discover the mistake."Reilley, 69 Ohio St.3d at 352-353.
 {¶ 15} While acknowledging that both Reilley and Irwin include the concept of negligence in the discovery of a mistake, Haven House contends that it is not ordinary negligence these decisions contemplate but something more than ordinary negligence. In Crout v. D.E.R. Bldg. Co.
(Nov. 13, 2001), 12th Dist. No. CA2000-12-039, the Twelfth Appellate District noted "Although the term `mistake' implies fault in the party to whom the mistake is imputed, the mere fact that a mistake was made in an instrument does not bar the right of reformation of a contract. Mistakes rarely occur in the absence of some form of negligence by a party or an agent of the party. Therefore, it is not essential that the party seeking the reformation of a contract show that he is wholly free from fault. Negligence that is mere inadvertence or excusable does not preclude reformation of a contract to conform to the intention of the parties." (Citations omitted.)
 {¶ 16} The Restatement of Contracts also indicates that a party's negligence does not necessarily preclude equitable relief. "A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." 1 Restatement of the Law 2d, Contracts (1981) 416, Mistake Section 157. The Ohio Supreme Court relied on this section in State ex rel. Walker v.Lancaster City School Dist. Bd. of Edn. (1997), 79 Ohio St.3d 216, 221
when it determined that the school board was entitled to correct the mutual mistake with regard to the number years of service the plaintiff was entitled to receive because the school board had acted in good faith and the teacher had suffered no loss. Thus, while Haven House's negligence may play a role in the determination of damages as between the parties, its inadvertence in discovering the wrong lease date on the addendum does not preclude it from rescinding the addendum.
 {¶ 17} Upon review of the evidence, it is reasonable under the circumstances that Gabel/Kuhlman bear the risk of the mistake in the addendum. If Haven House bears the risk of the mistake, then it cannot rescind the addendum, and Gabel/Kuhlman would have a valid lease for unit #39 as would Jobe/Hammond/Frase. If the addendum is rescinded, however, Gabel/Kuhlman would still have a valid lease for unit #37. Before entering into the addendum, Gabel/Kuhlman had twice indicated their desire to remain in unit #37. The first time was when they had renewed their lease in December 2002, and the second time was when they declined the initial offer to move into a remodeled unit. Gabel and Kuhlman testified that unit #37 was identical to unit #39 with the exception of the unit's outside view. Because there is some competent, credible evidence to support the trial court's ultimate decision to allocate the risk to Gabel/Kuhlman, we conclude that the first assignment of error is not well-taken.
 {¶ 18} In the second assignment of error, Gabel/Kuhlman argue that the trial court erred in ordering them to vacate unit #39 because none of the grounds for eviction under R.C. 1923.02 were satisfied. Haven House responds by contending that R.C. 1923.02 is not limited to just the breach of a rental agreement. In particular, R.C. 1923.02(A)(5) provides that forcible entry and detainer may be had "when the defendant is an occupier of lands or tenements, without color of title, and the complainant has the right of possession to them."
 {¶ 19} In any event, any right Gabel/Kuhlman may have had to occupy unit #39 expired with their December 7, 2001 lease which terminated by its own terms on August 12, 2003. Therefore, we find this assignment of error to be moot.
 {¶ 20} Upon consideration, we find that substantial justice was done the parties complaining. The judgment of the Bowling Green Municipal Court is affirmed. Appellants are ordered to pay the costs of this appeal.
Judgment affirmed.
Mark L. Pietrykowski, J., Judith Ann Lanzinger, J., and Arlene Singer, J., concur.